Emily AGER, an incompetent, by Law Lamar Ager, her father and duly appointed guardian, Plaintiff-Appellant,

v.

JANE C. STORMONT HOSPITAL AND TRAINING SCHOOL FOR NURSES, a/k/a Stormont-Vail Hospital, and Dan L. Tappen, M. D., Defendants-Appellees.

No. 79–2228.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 14, 1980.

Decided June 2, 1980.

John E. Shamberg, Kansas City, Kan. (Mark A. Johnson, Kansas City, Kan., with him on the brief), of Schnider, Shamberg & May, Chartered, Kansas City, Kan., for plaintiff-appellant.

John R. Martin, Topeka, Kan. (Eugene B. Ralston, Topeka, Kan., with him on the brief), of Ralston & Frieden, Topeka, Kan., for defendant-appellee Dan L. Tappen, M.D.

Jane C. Stormont Hospital and Training School for Nurses, a/k/a Stormont-Vail Hospital, defendant-appellee, did not file a brief.

Before SETH, Chief Judge, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Lynn R. Johnson, counsel for plaintiff Emily Ager, appeals from an order of the

District Court adjudging him guilty of civil contempt. Jurisdiction vests by reason of 28 U.S.C.A. § 1826(b).

Emily was born April 4, 1955, at Stormont-Vail Hospital in Topeka, Kansas. During the second stage of labor, Emily's mother suffered a massive rupture of the uterine wall. The ensuing loss of blood led to Mrs. Ager's death. Premature separation of the placenta from the uterine wall also occurred, resulting in fetal asphyxia. Following Emily's delivery, it was discovered that she evidenced signs of severe neurological dysfunction. Today, she is mentally impaired and a permanently disabled quadraplegic with essentially no control over her body functions.

In March, 1977, Emily's father filed, on her behalf, a complaint for the damages sustained at her birth. The complaint alleges, in essence, that "the hemorrhaging and resultant death of her mother and the brain damage and other injuries which she sustained . . . while still in her mother's womb and/or during her delivery, were directly and proximately caused by the negligence and carelessness of the defendants [Stormont-Vail Hospital and Dr. Dan L. Tappen, the attending physician] which joined and concurred in causing plaintiff's mother's death and plaintiff's bodily injuries and damages and resultant disability." [R., Vol. I, p. 4]. After joining the issues, Dr. Tappen propounded a series of interrogatories to the plaintiff. The specific interrogatories at issue here are:

1. Have you contacted any person or persons, whether they are going to testify or not, in regard to the care and treatment rendered by Dr. Dan Tappen involved herein?

2. If the answer to the question immediately above is in the affirmative, please set forth the name of said person or persons and their present residential and/or business address.

3. If the answer to question # 1 is in the affirmative, do you have any statements or written reports from said person or persons?

[R., Vol. I, p. 1].

In response, plaintiff filed written objections, accompanied by a lengthy brief. Dr. Tappen answered the plaintiff's objections. The answer brief was treated by the United States Magistrate as a motion for an order compelling discovery pursuant to Fed.Rules Civ.Proc., rule 37(a), 28 U.S.C.A. Following his review, the Magistrate ordered the plaintiff to answer the interrogatories:

Interrogatories No. 1, 2 and 3 should be answered with the single exception, if the plaintiff has contacted an expert who was informally consulted in preparation for trial, but who was never retained or specifically employed and will not be called as a witness, it will not be necessary for the plaintiff to supply the name and address of such person or persons or to set forth any statement or report which such person or persons may have made.

[R., Vol. I, p. 15].

Plaintiff's counsel answered the interrogatories in part, but failed to provide any information concerning consultative experts not expected to testify at trial. Plaintiff apparently based the refusal to answer on her contention that an expert who advises a party that his opinion will not aid the party in the trial of the case falls within the definition of experts informally consulted but not retained or specially employed. At defendant's suggestion, the Magistrate ordered plaintiff to provide further answers to the interrogatories, specifically defining the terms retained or specially employed:

In the generally accepted meaning of the term in everyday usage, "retained" or "specially employed" ordinarily implies some consideration, a payment or reward of some kind, as consideration for being "retained" or "specially employed." It follows, therefore, that if a medical expert is consulted for the purpose of rendering advice or opinion on a hospital chart, or a physician's medical records pertaining to a case, and is paid or makes a charge for such service, he has been "retained" or "specially employed" within the meaning of the Rule. If [such an] expert is not to be called as a witness, he

would be subject to the provisions of Rule 26(b)(4)(B) and, as shown by *Baki, supra,* [*Baki v. B. F. Diamond Construction Co.,* 71 F.R.D. 179 (D.Md.1976)] there would be routine access to the names and addresses of such experts; but if they are not to be called as witnesses, facts known or opinions held by such experts would be subject to the requirements of Rule 26(b)(4)(B). However, if the consultation with the medical expert was strictly on an informal basis and such expert was not "retained" or "specially employed," the identity of such expert need not be disclosed.

[R., Vol. I, pp. 24–25].

Rather than complying with the Magistrate's order, Ager sought review by the District Court pursuant to 28 U.S.C.A. § 636(b)(1)(A). The District Court denied plaintiff's motion for review as untimely. On reconsideration, the Court affirmed the Magistrate's order:

> In the context of this malpractice case the question is whether plaintiff must identify each and every doctor, physician or medical expert plaintiff's counsel retained or specially employed during pretrial investigation and preparation. The courts have been divided on the issue. Compare *Weiner v. Bache Halsey Stuart, Inc.,* 76 F.R.D. 624 (S.D.Fla.1977), *Baki v. B. F. Diamond Const. Co.,* 71 F.R.D. 179 (D.Md.1976), *Sea Colony, Inc. v. Continental Ins. Co.,* 63 F.R.D. 113 (D.Del.1974) and *Nemetz v. Aye,* 63 F.R.D. 66 (W.D. Penn.1974) with *Guilloz v. Falmouth Hospital Ass'n, Inc.,* 21 F.R.Serv.2d 1367 (D.Mass.1976) and *Perry v. W. S. Darley & Co.,* 54 F.R.D. 278 (E.D.Wis.1971). The Magistrate relied upon *Baki* and *Nemetz, supra,* and held the identities of persons retained or specially employed for an opinion(*i. e.* to whom some consideration had been paid) to be discoverable. We have again read the Magistrate's Order and the suggestions of counsel. We find plaintiff's argument based upon the Advisory Committee Notes to be unpersua-

sive. After reviewing the cases and the suggestions of counsel we cannot find the Magistrate's Order to be "contrary to law." [Supp.R., Vol. I, pp. 4–5]. [Parenthetical remark in original text].

Plaintiff's counsel filed a formal response to the Court's order and refused to comply. The Court thereafter entered a civil contempt order against Johnson.[1] Johnson was committed to the custody of the United States Marshal until his compliance with the Court's order. Execution of the custody order was stayed pending appeal, after Johnson posted a recognizance bond. The Court specifically found that the appeal was not frivolous or taken for purposes of delay.

The issues on appeal are whether: (1) the District Court erred in adjudging Johnson guilty of civil contempt; and (2) a party may routinely discover the names of retained or specially employed consultative non-witness experts, pursuant to Fed.Rules Civ.Proc., rule 26(b)(4)(B), 28 U.S.C.A., absent a showing of exceptional circumstances justifying disclosure.

*The Contempt Power*

When a recalcitrant witness fails to obey the duly issued orders of a court, he may be cited for contempt, either criminal, civil or both. Whether the adjudication of contempt "survives the avoidance of [the] underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls." *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1342 (3d Cir. 1976). [Footnote omitted]. *See also: United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Burkett v. Chandler,* 505 F.2d 217 (10th Cir. 1974), *cert. denied,* 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975); *Hyde Construction Co. v. Koehing Co.,* 348 F.2d 643 (10th Cir. 1965), *rev'd on other grounds,* 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966).

The primary purpose of a criminal contempt is to punish defiance of a court's

---

1. At the contempt hearing, Johnson agreed to accept any sanctions on behalf of plaintiff for failing to disclose the identities of plaintiff's consultative witnesses.

judicial authority. Accordingly, the normal beneficiaries of such an order are the courts and the public interest. *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822 (5th Cir. 1976). On the other hand, civil contempt is characterized by the court's desire "to *compel* obedience of the court order or to compensate the litigant for injuries sustained from the disobedience." *Id.* at p. 827. The remedial aspects outweigh the punitive considerations. Thus, the primary beneficiaries of such an order are the individual litigants. The judicial system benefits to a lesser extent. *United States v. Wendy*, 575 F.2d 1025 (2d Cir. 1978).

■ Our review of the order, and the proceedings held in connection therewith, convinces us that the citation was framed in the nature of a coercive civil contempt. We recognize that coercive, as opposed to compensatory, civil contempt approaches the criminal arena. Thus, it can be argued that the contempt judgment should survive the invalidity of an underlying order. It is our view, however, that the "civil nature of the contempt is not turned criminal by the court's efforts at vindicating its authority, an interest which may be implicated in either civil or criminal proceedings. . . . [W]e are giving . . . weight to the punitive-remedial dichotomy." *United States v. Wendy, supra,* at p. 1029 n. 13. *See, United States v. Work Wear Corp.*, 602 F.2d 110 (6th Cir. 1979). We find the reasoning of *Latrobe Steel Co. v. United Steelworkers, supra,* particularly persuasive under the facts presented in this case:[2]

> [T]he reasoning implicit in *United Mine Workers* requires that coercive contempt be treated in the same fashion as compensatory contempt. In coercive contempt, as with remedial contempt, the reversal

of the underlying injunction indicates that the complainant never had a valid right which was enforceable against the defendant. Just as a person is not entitled to reap a monetary benefit in such circumstances, so, too, should he be unable to insist upon the exaction of coercive sanctions to finalize a process initiated by himself for his own benefit.

545 F.2d at p. 1347. [Footnotes omitted].

### Validity of the Underlying Order

Having held that the viability of the contempt citation depends upon the validity of the underlying order, we now turn to the issue of whether a party may routinely discover the identities of non-witness expert consultants absent a showing of exceptional circumstances justifying disclosure.[3]

Fed.Rules Civ.Proc., rule 26, 28 U.S.C.A., governs the scope of discovery concerning experts or consultants. Subdivision (b)(4) separates these experts into four categories, applying different discovery limitations to each:

(1) Experts a party expects to use at trial. The opponent may learn by interrogatories the names of these trial witnesses and the substance of their testimony but further discovery concerning them can be had only on motion and court order.

(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. Except as provided in rule 35 for an examining physician, the facts and opinions of experts in this category can be discovered only on a showing of exceptional circumstances.

(3) Experts informally consulted in preparation for trial but not retained.

---

2. We do not reach the issue of whether "[i]n those cases in which a district court judge has made an express finding that the action compelled was required in the public interest, a coercive civil contempt . . . should survive the subsequent invalidation of the underlying order." *Latrobe Steel Co. v. United Steelworkers, supra,* at p. 1350 (Garth, J. concurring).

3. While any "factual findings of the magistrate adopted by the district court [are] subject to the clearly erroneous standard of Rule 53(a), . . . the legal decision of the magistrate [is] subject to the full review of this court." *Small v. Olympic Prefabricators, Inc.*, 588 F.2d 287, 291 (9th Cir. 1978), *quoting DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, 509 (1st Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

No discovery may be had of the names or views of experts in this category.

(4) Experts whose information was not acquired in preparation for trial. This class, which includes both regular employees of a party not specially employed on the case and also experts who were actors or viewers of the occurrences that gave rise to suit, is not included within Rule 26(b)(4) at all and facts and opinions they have are freely discoverable as with any ordinary witness. [Footnotes omitted].

Wright & Miller, *Federal Practice and Procedure* : Civil § 2029, [hereinafter cited as Wright & Miller].

We are here concerned *only* with the second and third category of experts.

### A. Discovery of Experts Informally Consulted, But Not Retained or Specially Employed

█ No provision in Fed.Rules Civ.Proc., rule 26(b)(4), 28 U.S.C.A., expressly deals with non-witness experts who are informally consulted by a party in preparation for trial, but not retained or specially employed in anticipation of litigation. The advisory committee notes to the rule indicate, however, that subdivision (b)(4)(B) "precludes discovery against experts who [are] informally consulted in preparation for trial, but not retained or specially employed." We agree with the District Court that this preclusion not only encompasses information and opinions developed in anticipation of litigation, but also insulates discovery of the identity and other collateral information concerning experts consulted informally. *Tahoe Ins. Co. v. Morrison-Knudsen Co., Inc.*, 84 F.R.D. 362 (D.Idaho 1979); *Arco Pipeline Co. v. S/S Trade Star*, 81 F.R.D. 416 (E.D.Pa.1978); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624 (S.D.Fla.1977); *Baki v. B. F. Diamond Const. Co.*, 71 F.R.D. 179 (D.Md.1976); *Nemetz v. Aye*, 63 F.R.D. 66 (W.D.Pa.1974). *See also*, Wright & Miller, Civil § 2033; 4 Moore's Federal Practice para. 26.66[4]; Graham, *Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part One, an Analytical Study*, 1976 U.Ill.L.F. 895, 938–939 [hereinafter cited as Graham, *Part One* ].[4]

Relying on Professor Graham's article, Ager urges that "an expert 'would be considered informally consulted if, for any reason, the consulting party did not consider the expert of any assistance', and that '[a] consulting party may consider the expert of no assistance because of his insufficient credentials, his unattractive demeanor, or his excessive fees.'" Brief of appellant at p. 37, *quoting*, Graham, *Part One* at pp. 939–940 n. 182. This view is, of course, at odds with the Trial Court's ruling that:

> The commonly accepted meaning of the term "informally consulted" necessarily implies a consultation without formality. If one makes an appointment with a medical expert to discuss a case or examine records and give advice or opinion for which a charge is made and the charge is paid or promised—what is informal about such consultation? On the other hand, an attorney meets a doctor friend at a social occasion or on the golf course and a discussion occurs concerning the case—no charge is made or contemplated—no written report rendered—such could clearly be an "informal consultation."

[R., Vol. I, p. 25].

*See also, Nemetz v. Aye, supra.*

█ We decline to embrace either approach in its entirety. In our view, the status of each expert must be determined on an *ad hoc* basis. Several factors should be considered: (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any (*e. g.* payment, confidentiality of test data or opinions, etc.). Of course, additional factors bearing on this determination may be examined if relevant.

---

**4.** One court has indicated that disclosure may be required in extraordinary circumstances. *Nemetz v. Aye, supra.* We express no views on this issue.

Thus, while we recognize that an expert witness' lack of qualifications, unattractive demeanor, excessive fees, or adverse opinions may result in a party's decision not to use the expert at trial, nonetheless, there are situations where a witness is retained or specifically employed in anticipation of litigation prior to the discovery of such undesirable information or characteristics. On the other hand, a telephonic inquiry to an expert's office in which only general information is provided may result in informal consultation, even if a fee is charged, provided there is no follow-up consultation.

The determination of the status of the expert rests, in the first instance, with the party resisting discovery. Should the expert be considered informally consulted, that categorization should be provided in response. The propounding party should then be provided the opportunity of requesting a determination of the expert's status based on an *in camera* review by the court. Inasmuch as the District Court failed to express its views on this question, we deem it appropriate to remand rather than attempt to deal with the merits of this issue on appeal. *Dandridge v. Williams,* 397 U.S. 471, 476 n. 6, 90 S.Ct. 1153, 1157 n. 6, 25 L.Ed.2d 491 (1970). If the expert is considered to have been only informally consulted in anticipation of litigation, discovery is barred.

### B. Discovery of the Identities of Experts Retained or Specially Employed

Subdivision (b)(4)(B) of rule 26 specifically deals with non-witness experts who have been retained or specially employed by a party in anticipation of litigation. The text of that subdivision provides that "facts or opinions" of non-witness experts retained or specially employed may only be discovered upon a showing of "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Inasmuch as discovery of the identities of these experts, absent a showing of exceptional circumstances, was not expressly precluded by the text of subdivision (b)(4)(B), the District Court found the

general provisions of rule 26(b)(1) controlling. Subdivision (b)(1) provides:

(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . including the . . . identity and location of persons having knowledge of any discoverable matter. . .

The District Court's ruling on this issue follows *Arco Pipeline Co. v. S/S Trade Star, supra; Weiner v. Bache Halsey Stuart, Inc., supra; Baki v. B. F. Diamond Const. Co., supra;* and *Sea Colony, Inc. v. Continental Ins. Co., supra.* Several decisions, however, have held that rule 26(b)(4)(B) requires a showing of exceptional circumstances before names of retained or specially employed consultants may be discovered. *Guilloz v. Falmouth Hospital Association, Inc.,* 21 F.R.Serv.2d 1367 (D.Mass.1976); *Perry v. W. S. Darley & Co.,* 54 F.R.D. 278 (E.D.Wis.1971); *Fernandes v. United Fruit Company,* 50 F.R.D. 82 (D.Md.1970) (*citing, Knighton v. Villian & Fassio e Compagnia,* 39 F.R.D. 11, 14 (D.Md.1965)); *Trainor v. Young,* 348 So.2d 1004 (La.App.1977), *writ refused,* 351 So.2d 169 (La.1977) (construing state procedural provisions parallel to Fed. Rule Civ.Proc., rule 26(b)(4)(B)).

The advisory committee notes indicate that the structure of rule 26 was largely developed around the doctrine of unfairness—designed to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation. Dr. Tappen contends that "[d]iscoverability of the identity of an expert retained or specially employed by the other party but who is not to be called to testify hardly gives the discovering party a material advantage or benefit at the expense of the opposing party's preparation. Once those identities are disclosed, the discovering party is left to his own diligence and resourcefulness in contacting such experts and seeking to enlist whatever assistance they may be both able

and willing to offer." Brief of appellee at pp. 12–13. The drafters of rule 26 did not contemplate such a result:

> Subdivision (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation. Thus the subdivision precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed. As an ancillary procedure, a party may *on a proper showing* require the other party to *name* experts retained or specially employed, but not those informally consulted. [Emphasis supplied].

▬ We hold that the "proper showing" required to compel discovery of a non-witness expert retained or specially employed in anticipation of litigation[5] corresponds to a showing of "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed.Rules Civ.Proc., rule 26(b)(4)(B), 28 U.S.C.A.

There are several policy considerations supporting our view. Contrary to Dr. Tappen's view, once the identities of retained or specially employed experts are disclosed, the protective provisions of the rule concerning facts known or opinions held by such experts are subverted. The expert may be contacted or his records obtained and information normally non-discoverable, under rule 26(b)(4)(B), revealed. Similarly, although perhaps rarer, the opponent may attempt to compel an expert retained or specially employed by an adverse party in anticipation of trial, but whom the adverse party does not intend to call, to testify at trial. *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir. 1976).[6] The possibility also exists, although we do not suggest it would occur in this case, or that it would be proper, that a party may call his opponent to the stand and ask if certain experts were retained in anticipation of trial, but not called as a witness, thereby leaving with the jury an inference that the retaining party is attempting to suppress adverse facts or opinions. Finally, we agree with Ager's view that "[d]isclosure of the identities of [medical] consultative experts would inevitably lessen the number of candid opinions available as well as the number of consultants willing to even discuss a potential medical malpractice claim with counsel . . . .. [I]n medical malpractice actions [perhaps] more than any other type of litigation, the limited availability of consultative experts and the widespread aversion of many health care providers to assist plaintiff's counsel require that, absent special circumstances, discovery of the identity of evaluative consultants be denied. If one assumes that access to informed opinions is desirable in both prosecuting valid claims and eliminating groundless ones, a discovery practice that would do harm to these objectives should not be condoned." Brief of appellant at pp. 27–28, 29–30.

▬ In sum, we hold that the identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable except as "provided in Rule 35(b)[7] or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[8] Fed.Rules Civ.Proc., rule 26(b)(4)(B), 28 U.S.C.A. The party "seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden" in demonstrating the existence of exceptional circumstances. *Hoover v. United States Dept. of Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980).

---

**5.** The distinction between experts who are retained or specially employed in anticipation of litigation is somewhat unclear. *Virginia Elec. & Power Co. v. Sun Shipbuilding & D. D. Co.*, 68 F.R.D. 397 (E.D.Va.1975); *compare, Seiffer v. Topsy's International Inc.*, 69 F.R.D. 69, 72 (D.Kan.1975). *See also: Harasimowitz v. McAllister*, 78 F.R.D. 319 (E.D.Pa.1978).

**6.** We do not here decide the propriety of this action.

**7.** Rule 35(b), Fed.Rules Civ.Proc., 28 U.S.C.A., deals with the exchange of information concerning physical or mental examinations of persons. These provisions are not at issue here.

**8.** Professor Albert Sacks, reporter to the advisory committee, listed two examples of excep-

**504**

*Disposition*

■ The order of the District Court adjudging Lynn R. Johnson guilty of civil contempt is vacated. The cause is remanded. On remand, the status of the non-witness experts against whom discovery is sought should be undertaken as a two-step process. First, was the expert informally consulted in anticipation of litigation but not retained or specially employed? If so, no discovery may be had as to the identity or opinions of the expert. Second, if the expert *was not* informally consulted, but rather retained or specially employed in anticipation of litigation, but not expected to testify at trial, do exceptional circumstances exist justifying disclosure of the expert's identity, opinions or other collateral information?

VACATED AND REMANDED.

tional circumstances at a Practising Law Institute Seminar on Discovery held in Atlanta, Georgia, September 25–26, 1970:

(a) Circumstances in which an expert employed by the party seeking discovery could not conduct important experiments and test[s] because an item of equipment, etc., needed for the test[s] has been destroyed or is otherwise no longer available. If the party from whom discovery is sought had been able to have its experts test the item before its destruction or nonavailability, then information obtained from those tests might be discoverable.

(b) Circumstances in which it might be impossible for a party to obtain its own expert. Such circumstances would occur when the number of experts in a field is small and their time is already fully retained by others.

See: ALI–ABA, Civil Trial Manual p. 189.